**AUSTIN, Com'r of Banking, v. McCELVEY.**
(No. 9054.)

Court of Civil Appeals of Texas. Galveston.
Nov. 25, 1927.

Rehearing Denied. Jan. 5, 1928.

Bills and notes ⊖⟶527(1)—Evidence held to sustain finding that maker paid renewal note.

Evidence *held* sufficient to sustain finding of trial court acting without jury that maker fully paid renewal note as against contention that there was no evidence of payment whatsoever.

Appeal from District Court, Houston County; Ben F. Dent, Judge.

Suit by Chas. O. Austin, Commissioner of Banking, against J. T. McCelvey. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Fairchild & Redditt, of Lufkin, for appellant.

Adams & Adams, of Crockett, for appellee.

PLEASANTS, C. J. This suit was brought by appellant upon a note for $3,027.37 executed by appellee in favor of the First State Bank of Ratcliff, which bank had become insolvent and its assets passed into the hands of the appellant for administration.

Plaintiff's petition, after declaring upon the note, further alleges that to secure the payment of the note defendant executed and delivered to the bank a chattel mortgage upon 70 head of cattle described in the petition, and prays for foreclosure of said mortgage. It is further alleged that the defendant had made payments on the note amounting to the aggregate sum of $415, and judgment was asked for a balance of $2,612.37.

After a general demurrer, special exceptions, and general denial, the defendant answered as follows:

"Further answering, this defendant says that on the 16th day of December, 1919, he executed a note to the First State Bank of Ratcliff for $1,900. That he fully paid same as follows: By one check to J. H. Green for $635; by one check of Ed Little for $1,180; one check of Jordan for $135.

"These payments were all paid in 1920, in or about May, April, or June, but the exact dates defendant has not been able to fix, but the bank books will show exact date of the deposits in said bank, and plaintiff is now notified to produce said books on the trial of this cause.

"That said note was all defendant owed said bank at the time of payments.

"That on March 23, 1923, said bank required defendant to make a renewal note, which is the note sued on. That said original note was entitled to above credits at the time the renewal note was made, but said original note could not be found, and defendant gave this note, now sued on, with the express understanding that these credits were on the original note and were to be placed, when the original note was found, on the note now sued on.

"That when the original note was found, no credits were on it, but the only credit found was the deposits in the bank. Defendant says that he has never drawn said deposits out of said bank, that they were paid to the bank with the express instructions to credit them on defendant's notes, which was all he owed said bank. That defendant sent these checks to said bank by mail, instructing said bank in, letter to credit them on his note, and plaintiff is hereby notified to produce said letters, or secondary proof of same will be made.

"That the credits acknowledged by plaintiff on the note in this suit were no part of the above credits claimed by this defendant.

"That all the mortgaged property has been sold, with knowledge and consent of bank, and proceeds paid to bank to be credited on defendant's note. .

"Defendant prays that proof be heard, and judgment be given that he go hence without day and recover his costs, and for general and special relief."

The trial in the court below without a jury resulted in a judgment in favor of defendant. At the request of appellant the trial court filed the following conclusions of fact and law:

"I find that in 1919 J. T. McCelvey executed his note in favor of the Ratcliff State Bank for $1,900.

"2. I find that in May and June, 1920, McCelvey paid on said note the sums of $1,180, $735, and $135.

"3. I find that McCelvey executed the renewal note sued on with the agreement and understanding that all credits applicable to the old note should be placed on such renewal note, the old note then being misplaced.

"4. I find that when the old note was found, that the credits had not been placed on it, but that they should have been, and should be placed on the renewal note, now sued on.

"5. I find that the proceeds of sales of cattle, made in 1925, to wit, $400 and $15, are credits on the note sued on, in addition to the above credits of 1920.

"From the above findings of fact I conclude that the note sued on having been fully paid by defendant, the plaintiff is not entitled to judgment for any sum, and I find for defendant."

Appellant's brief presents but two propositions, which are as follows:

"(1) In a suit upon a promissory note, the execution of which is admitted, the plaintiff is entitled to judgment when defendant fails to plead and prove, and the undisputed evidence fails to show payment of said note, after execution thereof.

"(2) The trial judge cannot arbitrarily disregard and refuse to give effect to positive, unequivocal testimony of any witness or record testimony where same is not contradicted or disputed by circumstances or otherwise, and there is no attempt at impeachment of such testimony."

It is obvious that these propositions present the one question of whether there is any evidence to sustain the finding of the trial court that appellee had paid the note upon which appellant's suit is brought.

The defendant testified:

"My name is J. T. McCelvey. I am 52 years old, and reside in Houston county, Tex., near Ratcliff, and have so resided 52 years. I have been engaged in farming, in the cattle business, and various other business enterprises, and have had considerable business and banking experience. I have done business with a good many banks in Houston county, and for many years did business with the First State Bank, Ratcliff, Tex. In 1919, I made a note to the First State Bank of Ratcliff, Tex., for $1,900. In 1920, I paid $1,180 on this note, in this manner: I sold some cattle to E. W. Little, and he gave me a check for $1,180. I took this check and turned same over to the Ratcliff bank. Bob Connor was cashier of the bank, but he is now dead. I sold some more cattle, and took another check in the sum of $735, and also another check for $135, which I paid on this note in 1920. In 1925, some more cattle were sold by the bank, and $400 paid on the note. I sold some cattle this year, and have a check in my pocket for $35, which I am ready to apply on the note. I have sold all the cattle mortgaged to secure the note, and am willing to apply same on the note. When I renewed the note, I claimed these credits, and was told that the old note was mislaid, but credits would be put on new note when old note was found."

After the plaintiff had shown by several witnesses that the Little check for $1,180 was not turned over to the Ratcliff bank, as testified by defendant, he again took the stand and gave the following testimony:

"I was mistaken this morning when I stated that the check Mr. Little gave me was delivered to the bank. I thought I had delivered this check to the First State Bank, Ratcliff, Tex., but was evidently mistaken. I put this check with Crockett State Bank and then gave Ratcliff bank check on Crockett bank for $1,180. I was mistaken when I thought I sent the check direct to Ratcliff bank. All three of these checks, one for $1,180, one for $735, and one for $135, were paid on my $1,900 note, which I had given the Ratcliff bank. They were paid in May or June, 1920, to Ratcliff bank. I received not one cent from the Ratcliff bank on these three checks. They were paid on the note. When I gave new note, the bank told me the old note was mislaid, and had these credits on it, and they would put the credits on the new note when they found the old note. I told the bank then I had paid the note and wanted it back, but the girl who was in the bank told me they would put all the credits on the new note, but wanted the new note. I never got one cent of this money, but thought all the time I was credited on my note. The bank sold the cattle and collected the $415 credits on this note. I did not pay those credits, but the bank sold the cattle for me and placed the credits on the note. I never told Mr. McKinney that I would not renew the note because I had no money to pay it. I told him I had not got the old note, the first note I gave the bank for $1,900, and the note did not have the credits on it, and that I wanted these credits before I gave new note.

"Bob Connor was dead. He was my nephew. He knew all about this, and if he was living, I know I could get these credits, but a new management having the bank, I wanted my credits before I signed this note. I state positively that I did not receive a cent of the $1,180, the $735, the $135, the $400, and the $15 paid the Ratcliff bank out of the cattle sales. Every dollar of these were paid on the note."

With this positive testimony of the defendant, it cannot be said that there is no evidence to sustain the findings of the trial court.

The question of whether the finding is so against the great weight of the evidence as to require its reversal is not presented by the propositions above set out.

It follows from the foregoing that neither of appellant's propositions can be sustained, and that the judgment must be affirmed, and it has been so ordered.

Affirmed.